---

MARIE DICIANO,

                Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

                Defendant.

1:18-cv-17383-NLH

**OPINION**

---

**APPEARANCES:**

RICHARD LOWELL FRANKEL
BROSS & FRANKEL, PA
725 KENILWORTH AVE
CHERRY HILL, NJ 08002

    *On behalf of Plaintiff*

NAOMI B. MENDELSOHN
DAVID E. SOMERS, III
SOCIAL SECURITY ADMINISTRATION
300 SPRING GARDEN ST
6TH FLOOR
PHILADELPHIA, PA 19123

    *On behalf of Defendant*

**HILLMAN**, District Judge

    This matter comes before the Court pursuant to Section
205(g) of the Social Security Act, as amended, 42 U.S.C. §
405(g), regarding Plaintiff's application for Disability
Insurance Benefits ("DIB")[1] under Title II of the Social

---

[1] DIB is a program under the Social Security Act to provide

Security Act.  42 U.S.C. § 423, et seq.  The issue before the

Court is whether the Administrative Law Judge ("ALJ") erred in

finding that there was "substantial evidence" that Plaintiff

was not disabled at any time since her alleged onset date of

disability, June 5, 2014.  For the reasons stated below, this

Court will affirm that decision.

## I.    BACKGROUND AND PROCEDURAL HISTORY

On October 3, 2014, Plaintiff, Marie Diciano,

protectively filed an application for DIB,[2] alleging that she

became disabled on June 5, 2014.  Plaintiff claims that she

can no longer work as a store laborer because of her bipolar

disorder, lupus, rheumatoid arthritis, blurred vision,

anxiety, panic disorder, degenerative disc disease,

osteoarthritis, and a learning disorder.

After Plaintiff's claim was denied initially upon

reconsideration, Plaintiff requested a hearing before an ALJ,

_____

disability benefits when a claimant with a sufficient number
of quarters of insured employment has suffered such a mental
or physical impairment that the claimant cannot perform
substantial gainful employment for at least twelve months.  42
U.S.C. § 423 et seq.

[2] A protective filing date marks the time when a disability
applicant makes a written statement of his or her intent to
file for benefits.  That date may be earlier than the date of
the formal application and may provide additional benefits to
the claimant.  See SSA Handbook 1507; SSR 72-8.

which was held on August 21, 2017.  On August 30, 2017, the
ALJ issued an unfavorable decision.  Plaintiff's Request for
Review of Hearing Decision was denied by the Appeals Council
on October 17, 2018, making the ALJ's August 30, 2017 decision
final.  Plaintiff brings this civil action for review of the
Commissioner's decision.

## II.  DISCUSSION

### A.  Standard of Review

Under 42 U.S.C. § 405(g), Congress provided for judicial
review of the Commissioner's decision to deny a complainant's
application for social security benefits.  Ventura v. Shalala,
55 F.3d 900, 901 (3d Cir. 1995).  A reviewing court must
uphold the Commissioner's factual decisions where they are
supported by "substantial evidence."  42 U.S.C. §§ 405(g),
1383(c)(3); Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir.
2001); Sykes v. Apfel, 228 F.3d 259, 262 (3d Cir. 2000);
Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992).
Substantial evidence means more than "a mere scintilla."
Richardson v. Perales, 402 U.S. 389, 401 (1971)(quoting
Consolidated Edison Co. V. NLRB, 305 U.S. 197, 229 (1938)).
It means "such relevant evidence as a reasonable mind might
accept as adequate to support a conclusion."  Id.  The inquiry
is not whether the reviewing court would have made the same

determination, but whether the Commissioner's conclusion was reasonable.  See Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988).

A reviewing court has a duty to review the evidence in its totality.  See Daring v. Heckler, 727 F.2d 64, 70 (3d Cir. 1984).  "[A] court must 'take into account whatever in the record fairly detracts from its weight.'" Schonewolf v. Callahan, 972 F. Supp. 277, 284 (D.N.J. 1997) (quoting Willbanks v. Secretary of Health & Human Servs., 847 F.2d 301, 303 (6th Cir. 1988) (quoting Universal Camera Corp. V. NLRB, 340 U.S. 474, 488 (1951)).

The Commissioner "must adequately explain in the record his reasons for rejecting or discrediting competent evidence." Ogden v. Bowen, 677 F. Supp. 273, 278 (M.D. Pa. 1987) (citing Brewster v. Heckler, 786 F.2d 581 (3d Cir. 1986)).  The Third Circuit has held that an "ALJ must review all pertinent medical evidence and explain his conciliations and rejections."  Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 122 (3d Cir. 2000).  Similarly, an ALJ must also consider and weigh all of the non-medical evidence before him.  Id. (citing Van Horn v. Schweiker, 717 F.2d 871, 873 (3d Cir. 1983)); Cotter v. Harris, 642 F.2d 700, 707 (3d Cir. 1981).

The Third Circuit has held that access to the

Commissioner's reasoning is indeed essential to a meaningful

court review:

> Unless the [Commissioner] has analyzed all
> evidence and has sufficiently explained
> the weight he has given to obviously
> probative exhibits, to say that his
> decision is supported by substantial
> evidence approaches an abdication of the
> court's duty to scrutinize the record as a
> whole to determine whether the conclusions
> reached are rational.

Gober v. Matthews, 574 F.2d 772, 776 (3d Cir. 1978). Although

an ALJ, as the fact finder, must consider and evaluate the

medical evidence presented, Fargnoli, 247 F.3d at 42, "[t]here

is no requirement that the ALJ discuss in its opinion every

tidbit of evidence included in the record," Hur v. Barnhart,

94 F. App'x 130, 133 (3d Cir. 2004). In terms of judicial

review, a district court is not "empowered to weigh the

evidence or substitute its conclusions for those of the fact-

finder." Williams, 970 F.2d at 1182. However, apart from the

substantial evidence inquiry, a reviewing court is entitled to

satisfy itself that the Commissioner arrived at his decision

by application of the proper legal standards. Sykes, 228 F.3d

at 262; Friedberg v. Schweiker, 721 F.2d 445, 447 (3d Cir.

1983); Curtin v. Harris, 508 F. Supp. 791, 793 (D.N.J. 1981).

**B.    Standard for DIB**

The Social Security Act defines "disability" for purposes

of an entitlement to a period of disability and disability
insurance benefits as the inability to engage in any
substantial gainful activity by reason of any medically
determinable physical or mental impairment which can be
expected to result in death, or which has lasted or can be
expected to last for a continuous period of not less than 12
months.  See 42 U.S.C. § 1382c(a)(3)(A).  Under this
definition, a Plaintiff qualifies as disabled only if her
physical or mental impairments are of such severity that she
is not only unable to perform her past relevant work, but
cannot, given her age, education, and work experience, engage
in any other type of substantial gainful work which exists in
the national economy, regardless of whether such work exists
in the immediate area in which she lives, or whether a
specific job vacancy exists for her, or whether she would be
hired if she applied for work.  42 U.S.C. § 1382c(a)(3)(B)
(emphasis added).

     The Commissioner has promulgated regulations[3] for
determining disability that require application of a five-step
sequential analysis.  See 20 C.F.R. § 404.1520.  This five-

---

[3] The regulations were amended for various provisions effective
March 27, 2017.  See 82 F.R. 5844.  The parties do not
indicate that any of the amendments are applicable to the
issues presented by Plaintiff's appeal.

step process is summarized as follows:

1.   If the claimant currently is engaged in substantial
     gainful employment, she will be found "not
     disabled."

2.   If the claimant does not suffer from a "severe
     impairment," she will be found "not disabled."

3.   If the severe impairment meets or equals a listed
     impairment in 20 C.F.R. Part 404, Subpart P,
     Appendix 1 and has lasted or is expected to last for
     a continuous period of at least twelve months, the
     claimant will be found "disabled."

4.   If the claimant can still perform work she has done
     in the past ("past relevant work") despite the
     severe impairment, she will be found "not disabled."

5.   Finally, the Commissioner will consider the
     claimant's ability to perform work ("residual
     functional capacity"), age, education, and past work
     experience to determine whether or not she is
     capable of performing other work which exists in the
     national economy.  If she is incapable, she will be
     found "disabled."  If she is capable, she will be
     found "not disabled."

20 C.F.R. § 404.1520(b)-(f).  Entitlement to benefits is

therefore dependent upon a finding that the claimant is

incapable of performing work in the national economy.

      This five-step process involves a shifting burden of

proof.  See Wallace v. Secretary of Health & Human Servs., 722

F.2d 1150, 1153 (3d Cir. 1983).  In the first four steps of

the analysis, the burden is on the claimant to prove every

element of her claim by a preponderance of the evidence.  See

id.  In the final step, the Commissioner bears the burden of

proving that work is available for the Plaintiff: "Once a
claimant has proved that he is unable to perform his former
job, the burden shifts to the Commissioner to prove that there
is some other kind of substantial gainful employment he is
able to perform." <u>Kangas v. Bowen</u>, 823 F.2d 775, 777 (3d Cir.
1987); <u>see</u> <u>Olsen v. Schweiker</u>, 703 F.2d 751, 753 (3d Cir.
1983).

### C.    Analysis

At step one, the ALJ found that Plaintiff had not engaged
in substantial gainful activity since the alleged onset of
disability.  At step two, the ALJ found that Plaintiff's
impairments of degenerative disc disease, osteoarthritis,
anxiety disorder, affective disorder, and learning disorder
were severe.  At step three, the ALJ determined that
Plaintiff's severe impairments nor her severe impairments in
combination with her other impairments did not equal the
severity of one of the listed impairments.  At step four, the
ALJ determined that Plaintiff had the residual functional
capacity ("RFC") to perform work at all skill and exertional
levels with certain restrictions,[4] and she was able to perform

---

[4] 20 C.F.R. § 404.1568 ("In order to evaluate your skills and
to help determine the existence in the national economy of
work you are able to do, occupations are classified as
unskilled, semi-skilled, and skilled."); 20 C.F.R. § 404.1567
("Physical exertion requirements. To determine the physical

her past relevant work as a store laborer.[5]

Plaintiff presents three issues on appeal: (1) Whether
the ALJ erred by not providing a full function-by-function
analysis in his RFC determination; (2) Whether the ALJ erred
in finding that Plaintiff could perform a full range of work
at all exertional levels; and (3) Whether the ALJ erred in
failing to assign appropriate non-exertional limitations
relating to Plaintiff's mental health.[6]

---

exertion requirements of work in the national economy, we
classify jobs as sedentary, light, medium, heavy, and very
heavy.").

[5] Because the ALJ concluded that Plaintiff was capable of
performing her past relevant work, the ALJ did not address
step five of the sequential step analysis. Benjamin v.
Commissioner of Social Security, 2019 WL 351897, at *4 n.9
(D.N.J. 2019) (citing Valenti v. Commissioner of Social Sec.,
373 F. App'x 255, 258 n.1 (3d Cir. 2010); 20 C.F.R. §
404.1520(b)-(f)).

[6] Plaintiff also argues that the ALJ committed reversible error
by failing to consider her non-severe impairments of lupus and
rheumatoid arthritis, as well as her testimony about blurred
vision, in combination with her severe impairments. This
argument is without merit. It is true that an ALJ must assess
a claimant's severe impairments in combination with non-severe
impairments. But an ALJ does not have to consider an alleged
impairment if he does not find such an impairment is medically
determinable. See 20 C.F.R. § 404.1529; POMS, DI 25205.005
Evidence of a Medically Determinable Impairment ("A medically
determinable physical or mental impairment must result from
anatomical, physiological, or psychological abnormalities
which can be shown by medically acceptable clinical and
laboratory diagnostic techniques. The impairment must be
established by objective medical evidence (signs, laboratory
findings, or both) from an acceptable medical source, not on
an individual's statement of symptoms."); 20 C.F.R. §

These arguments all focus on the propriety of the ALJ's
RFC assessment.  A claimant's RFC reflects "what [the
claimant] can still do despite [his or her] limitations," 20
C.F.R. § 416.945(a), and the controlling regulations are clear
that the RFC finding is a determination expressly reserved to
the Commissioner, 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2),
404.1546(c), 416.946(c).

When making the RFC determination, the ALJ is required
to:

> [C]onsider all your symptoms, including pain, and the
> extent to which your symptoms can reasonably be accepted
> as consistent with the objective medical evidence and
> other evidence.  By objective medical evidence, we mean
> medical signs and laboratory findings . . . .  By other
> evidence, we mean . . . statements or reports from you,
> your treating or nontreating source, and others about
> your medical history, diagnosis, prescribed treatment,
> daily activities, efforts to work, and any other evidence
> showing how your impairment(s) and any related symptoms
> affect your ability to work. . . .

---

404.1545(a)(2) ("We will consider all of your medically
determinable impairments of which we are aware, including your
medically determinable impairments that are not 'severe,' as
explained in §§ 404.1520(c), 404.1521, and 404.1523, when we
assess your residual functional capacity.").  Here, the ALJ
found, "The claimant also alleged limitations from Lupus and
Rheumatoid Arthritis, but the medical evidence shows no
limitations from or treatment for either of these impairments.
Therefore, the undersigned finds these two impairments to be
non-medically determinable impairments."  (R. at 30.)
Plaintiff cites to no medical evidence to support that her
alleged lupus, rheumatoid arthritis, or blurred vision were
medically determinable impairments that the ALJ was required
to consider in the RFC analysis.

20 C.F.R. § 404.1529.

Additionally, the RFC assessment takes into consideration all of a claimant's medically determinable impairments in combination, including those that the ALJ has found to be severe, as well as those that are not deemed to be severe at step two. See 20 C.F.R. § 404.1545(a)(2) ("We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not 'severe,' as explained in §§ 404.1520(c), 404.1521, and 404.1523, when we assess your residual functional capacity.").

Here, the ALJ found Plaintiff's RFC to be as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following limitations: she can occasionally climb ladders, ropes, or scaffolds. She can frequently crawl. She can frequently reach overhead with both arms. She can do simple work without fast pace or strict production quotas, with only occasional, superficial interaction with co-workers and supervisors and none with the general public, with changes that are minor and can be introduced gradually.

(R. at 31.)

Plaintiff first argues that the ALJ erred in his RFC determination by not specifically addressing all seven exertional capacity functions required to be assessed by the ALJ. SSR 96-8p provides, "Exertional capacity addresses an

11

individual's limitations and restrictions of physical strength and defines the individual's remaining abilities to perform each of seven strength demands: Sitting, standing, walking, lifting, carrying, pushing, and pulling. Each function must be considered separately (e.g., 'the individual can walk for 5 out of 8 hours and stand for 6 out of 8 hours'), even if the final RFC assessment will combine activities (e.g., 'walk/stand, lift/carry, push/pull')." Plaintiff argues that the ALJ did not specifically address the functions of sitting, standing, walking, lifting, carrying, or pushing, which constitutes reversible error.

The Court does not agree. The RFC is a function-by-function assessment based on all of the relevant evidence of an individual's ability to do work-related activities, but an ALJ does not need to use particular language or adhere to a particular format in conducting his RFC analysis. Ungemach v. Commissioner of Social Security, 2019 WL 3024858, at *4 (D.N.J. 2019) (citing Jones v. Barnhart, 364 F.3d 501, 505 (3d Cir. 2004)). SSR 96-8p requires that each function "must be considered," but it does not require every function to be specifically delineated in the RFC. Indeed, SSR 96-8p contemplates that in his "final RFC assessment," an ALJ may assess the functions in combination rather than individually.

Here, the RFC did not specifically reference the
functions of sitting, standing, walking, lifting, carrying, or
pushing, but that does not mean the ALJ did not "consider"
those functions.  This is because implicit in the finding that
Plaintiff is capable of performing work at all exertional
levels is that Plaintiff has no limitations in those areas.
The ALJ did not err in his articulation of Plaintiff's RFC by
not listing all of the seven exertional limitations and
stating "no limitation" for six of the seven.[7]

    A more substantive challenge to the ALJ's RFC

---

[7] See, e.g., Malcolm v. Commissioner of Social Security, 2017
WL 5951703, at *19 (D.N.J. 2017) (noting "where, as here, the
ALJ's RFC determination is supported by substantial evidence,
and is "accompanied by a clear and satisfactory explication of
the basis on which it rests," Fargnoli v. Massanari, 247 F.3d
34, 41 (3d Cir. 2001), the Third Circuit does not require
strict adherence to the function-by-function analysis set
forth in Social Security Ruling 96-8p") (citing Chiaradio v.
Comm'r of Soc. Sec., 425 F. App'x 158, 161 (3d Cir. 2011)
(affirming the ALJ's RFC determination, despite the fact that
"the ALJ did not make a task by task analysis," where the
ALJ's RFC finding was supported by substantial evidence in the
record, and the ALJ's "overall review carefully considered
[the claimant's] past relevant work and the ALJ assessed what
[the claimant] could reasonably do."); Garrett v. Comm'r of
Soc. Sec., 274 F. App'x 159, 164 (3d Cir. 2008) (affirming the
ALJ's RFC determination, despite the ALJ's failure to perform
the precise function-by-function assessment outlined in SSR
96-8p, where the ALJ questioned the claimant about the
physical limitations of her prior work, and substantial
evidence supported the ALJ's findings); Bencivengo v. Comm'r
of Soc. Sec., 251 F.3d 153, No. 00-1995, slip op. at 4 (3d
Cir. Dec. 19, 2000) ("Although a function-by-function analysis
is desirable, SSR 96-8p does not require ALJs to produce such
a detailed statement in writing.")).

determination is Plaintiff's contention that the ALJ's finding that Plaintiff could perform a full range of work at all exertional levels is not supported by substantial evidence. Plaintiff's argument on this basis is separated into exertional and non-exertional limitations.

1.    **Exertional limitations**

Plaintiff argues that even though the ALJ found Plaintiff's degenerative disc disease and osteoporosis to be severe impairments, the ALJ did not account for those impairments at all.

A severe impairment is one that significantly limits a claimant's physical or mental ability to do basic work activities, which are: (1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) Capacities for seeing, hearing, and speaking; (3) Understanding, carrying out, and remembering simple instructions; (4) Use of judgment; (5) Responding appropriately to supervision, co-workers and usual work situations; and (6) Dealing with changes in a routine work setting.  20 C.F.R. § 404.1522.  The severe impairment "must have lasted or must be expected to last for a continuous period of at least twelve months."  20 C.F.R. § 404.1509.

On the surface, Plaintiff's argument makes sense – an

impairment that is found to be "severe" must have some impact
on a person's functional capacity, otherwise it would not be
considered to be "severe" or even a medically determinable
impairment at all. Additionally, the finding that a person
can perform all exertional levels of work without any
restrictions effectively means that the person does not
actually have any severe impairments. In this case,
therefore, Plaintiff argues the ALJ's step two determination
that Plaintiff has the severe impairments of degenerative disc
disease and osteoporosis is in conflict with Plaintiff's RFC,
which does not account for those severe impairments.

The flaw with Plaintiff's argument is that the RFC does
account for Plaintiff's severe impairments. The ALJ did not
find that Plaintiff was capable of all exertional levels of
work without qualification. As to the exertional functional
limitations caused by her degenerative disc disease and
osteoporosis, the ALJ found that "she can occasionally climb
ladders, ropes, or scaffolds," she "can frequently crawl," and
she "can frequently reach overhead with both arms."

The AlJ's findings were based on the following:

- There is no evidence of complaints of back, neck, or
  shoulder pain to a treating medical provider before
  2016, and Plaintiff claimed disability onset of June 5,

2014.  (R. at 32.)

- A consultative examination performed on February 1,
  2015 found that Plaintiff had joint pain, but she could
  sit, stand, walk, crouch, hear, and speak.  (R. at 32,
  320.)  Plaintiff showed no difficulty getting up from a
  sitting position or getting on or off the examination
  table, she was able to flex her spine forward ninety
  degrees, squat, and walk on her heels and toes, which
  showed no limitations from an alleged back impairment.
  Plaintiff was also able to rotate, flex, and extend her
  neck.  She showed tenderness in her shoulders, but was
  able to elevate and abduct her shoulders up to ninety
  degrees.  (R. at 32.)

- In January 2016, Plaintiff complained to her primary
  care provider of low back pain of four days.  She
  received a prescription for a muscle relaxant and was
  advised to start physical therapy, but there is no
  evidence that Plaintiff engaged in physical therapy.
  (Id.)

- In February 2016, x-rays showed degenerative disc
  disease in the lumbar spine and mild diffuse
  osteoarthritis in the thoracic spine.  (Id.)

The ALJ concluded, "despite lack of treatment for her back and

shoulder impairments, the undersigned has assigned postural limitations to the claimant." (R. at 32-33.)

Plaintiff's issue with the RFC determination is that it was not more limited. Plaintiff contends that her severe impairments should have been afforded further restriction in basic work activities such as sitting, standing, walking, lifting, carrying, or pushing, but she does not point to specific evidence that supports further limitations. For example, Plaintiff argues that her "joint and spinal disorders would certainly preclude her from frequently lifting and carrying objects weighing 50 pounds or more," which is a requirement for work at the heavy exertional level. (Docket No. 12 at 22.) Plaintiff, however, does not cite to a medical record that precludes her from lifting 50-pound objects.

The limitations of a severe impairment must be supported by record evidence, and simply because an impairment is deemed "severe" at step two does not compel the finding that the impairment causes limitations in every basic work activity. See McCrea v. Comm'r of Soc. Sec., 370 F.3d 357, 360-61 (3d Cir. 2004) (citing 20 C.F.R. § 404.1520(a)(4)(ii)) (explaining that at step two, the ALJ has to "consider the medical severity of a claimant's impairment(s)," and that "the severity test at step two is a 'de minimis screening device to

17

dispose of groundless claims.'"). Even though Plaintiff

disagrees with the ALJ's finding that her degenerative disc

disease and osteoporosis did not warrant greater restrictions,

the ALJ properly supported his RFC determination regarding

Plaintiff's exertional limitations.[8]

## 2. Non-exertional limitations

Plaintiff argues that the ALJ did not properly account

for her mental limitations in her RFC. Plaintiff argues that

the ALJ's reference to the "stability" of her mental health

does not suggest non-disabling mental impairments, but rather

that she was stable at a significantly impaired level.

Plaintiff also argues that the ALJ should have construed

Plaintiff's treatment records to show that she was more

limited than the ALJ determined.

The Court does not agree. At step three, the ALJ

properly considered all the areas of mental functioning and

found Plaintiff to have moderate difficulties in those areas,

rather than marked or extreme limitations which would warrant

---

[8] Plaintiff presents an argument challenging the Vocational
Expert's job numbers. Plaintiff, however, says she is not
actually asserting this argument on appeal, and discusses this
argument in the context of what she would argue if she were
challenging the ALJ's decision on this basis. (Docket No. 12
at 22-24.) The Court will not consider a hypothetical
argument that Plaintiff is not raising on appeal.

a finding of disability.[9]  (R. at 30-31.)  In the RFC

determination, the ALJ recounted that progress notes from

Plaintiff's treating psychiatrist showed mostly a stable

condition over the past two years – 2015 to 2017 – and

contrary to Plaintiff's argument, the ALJ found the records

showed that the objective signs from her treatment remained

mostly normal.  (R. at 33.)

Plaintiff's challenge to the ALJ's assessment of

Plaintiff's mental impairment amounts to a simple disagreement

with how the ALJ weighed the record evidence rather than

pointing to a lack of record evidence to support his decision

as to Plaintiff's non-exertional limitations.  This argument

is insufficient to show that the ALJ's decision was not

supported by substantial evidence.  See, e.g., Perkins v.

Barnhart, 79 F. App'x 512, 514–15 (3d Cir. 2003) ("Perkins's

---

[9] At step three, an ALJ must consider whether a claimant's
severe impairment meets or equals a listed impairment in
Appendix 1 to Subpart P of Part 404 – Listing of Impairments,
12.00 Mental Disorders.  Part of that assessment is
determining whether a claimant's mental disorder results in
extreme limitation of one, or marked limitation of two,
paragraph B areas of mental functioning, which include: (1)
understand, remember, or apply information; (2) interact with
others; (3) concentrate, persist, or maintain pace; and (4)
adapt or manage oneself.  A marked limitation is where a
claimant's functioning in an area independently,
appropriately, effectively, and on a sustained basis is
seriously limited.  An extreme limitation is where a claimant
is not able to function in an area independently,
appropriately, effectively, and on a sustained basis.

argument here amounts to no more than a disagreement with the ALJ's decision, which is soundly supported by substantial evidence."); <u>Moody v. Commissioner of Social Security Administration</u>, 2016 WL 7424117, at *8 (D.N.J. 2016) ("[M]ere disagreement with the weight the ALJ placed on the opinion is not enough for remand."); <u>Grille v. Colvin</u>, 2016 WL 6246775, at *8 (D.N.J. 2016) ("Distilled to its essence, Plaintiff's argument here amounts to nothing more than a mere disagreement with the ALJ's ultimate decision, which is insufficient to overturn that decision."); <u>Desorte v. Commissioner of Social Security</u>, 2019 WL 1238827, at *6 (D.N.J. 2019) (citing <u>Richardson</u>, 402 U.S. at 401; <u>Daring</u>, 727 F.2d at 70) ("This Court must review the evidence in its totality, and take into account whatever in the record fairly detracts from its weight. Plaintiff has not provided the Court with specific evidence that detracts from the ALJ's RFC assessment, which the Court finds on its independent review to be reasonable and substantially supported."); <u>Barnes v. Commissioner of Social Security</u>, 2018 WL 1509086, at *4 (D.N.J. 2018) ("Plaintiff does not make any specific contentions as to where the ALJ erred and this Court's own independent review finds no error. On the contrary, the Court's review of the ALJ's decision finds that the ALJ properly followed the standards set forth

above, and that the ALJ's decision was supported by substantial evidence.").

## III. Conclusion

This Court may not second guess the ALJ's conclusions, and may only determine whether substantial evidence supports the ALJ's determinations. <u>Hartzell v. Astrue</u>, 741 F. Supp. 2d 645, 647 (D.N.J. 2010) (citing <u>Williams v. Sullivan</u>, 970 F.2d 1178, 1182 (3d Cir. 1992)) (explaining that the pinnacle legal principal is that a district court is not empowered to weigh the evidence or substitute its conclusions for those of the ALJ). For the foregoing reasons, the ALJ's determination that Plaintiff was not totally disabled as of June 5, 2014 is supported by substantial evidence. The decision of the ALJ will therefore be affirmed.

An accompanying Order will be issued.


Date: __December 9, 2019__          __s/ Noel L. Hillman__
At Camden, New Jersey          NOEL L. HILLMAN, U.S.D.J.